## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| CHERYL JENKINS,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No. 1:12-cv-00034-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Cheryl Jenkins's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-422. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

### I.  ADMINISTRATIVE PROCEEDINGS

On May 3, 2009, Cheryl Jenkins ("Petitioner") filed an application for disability insurance benefits. Petitioner's application states that she became unable to work on June 30, 2007. (AR 183). Petitioner alleges disability because of rheumatoid arthritis, carpal tunnel, significant loss of sensory/motor skills in her hands, osteopenia, and major clinical depression.[1]

---

[1] At the hearing, however, Petitioner testified that the conditions rendering her disabled and unable to work are rheumatoid arthritis and carpal tunnel syndrome, with loss of fine feeling and sensation. (AR 40). Her opening brief explains that her "mental health is not the central focus of her claim and is clearly secondary to her chief complaint and ailment of Inflammatory

**MEMORANDUM DECISION AND ORDER - 1**

(AR 206). Although Petitioner argues that her actual onset date is 2004, she did not list a 2004 onset date in her application forms, even though she describes in those forms medical history and diagnoses that occurred before her alleged onset date. (*See* AR 222-30). Because the alleged onset date is consistently reported in the application forms as June 30, 2007, the Court will use that date.[2] On that onset date, Petitioner was 44 years old with past relevant experience as a general duty nurse and office nurse. (AR 183, 201, 207, 231).

Petitioner's claim was denied on August 13, 2009 and, again, on reconsideration on October 6, 2009. (AR 138-41; 143-46). On November 30, 2009, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 26, 2011, ALJ Lloyd E. Hartford held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Charlene Quade, appeared and testified. (AR 12). A vocational expert, Anne F. Aastum, and a medical expert, Kristy Farnsworth, also testified, along with James Cooper, M.D., Petitioner's domestic partner and former treating psychiatrist. *Id*.

On March 8, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 12-24). Petitioner requested review from the Appeals Council and, on November 22, 2011, the Appeals

---

Arthritis, or R.A." Pet.'s Br., p. 13 (Dkt. 16). Because no issues were raised or argued in connection with the alleged mental conditions, the Court has not discussed them in this Order.

[2] Petitioner testified at the hearing that a physician told her in 2004 she was functionally disabled because of lack of sensation and nerve conduction. AR 49. Her disability report lists the "Claimant's Alleged Onset Date" as June 30, 2007. (Dkt. 17, Ex. A, p. 1) (Disability Report - Form SSA-3367). Petitioner points out that the "Potential Onset Date" is listed as June 30, 2007 because it is based on her date last insured, but the alleged onset date is the same. She did not allege an earlier onset date in her application. *See also* AR 183 (stating Petitioner became unable to work on June 30, 2007); AR 206 (Disability Report - Form SSA 3368, listing "6/30/2007" as the date Petitioner "became unable to work").

**MEMORANDUM DECISION AND ORDER - 2**

Council denied Petitioner's request for review (AR 1-4), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that the ALJ (1) erred in finding that Petitioner's impairment, or combination of impairments, do not functionally equal the listings; (2) failed to give appropriate weight to the opinions of Petitioner's treating physicians, and (3) erred in finding that Petitioner has the residual functional capacity to perform work identified by the vocational expert. *See* Pet.'s Brief, pp.7-8 (Dkt. 16). Petitioner requests that the Court reverse the ALJ's decision and grant benefits to her or, in the alternative, that the case be remanded for rehearing. *See id*. at p. 17; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). That is, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less

**MEMORANDUM DECISION AND ORDER - 3**

than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 4**

### III.  DISCUSSION

#### A.     Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in substantial gainful activity during the period from her alleged onset date of June 30, 2007, through her date last insured of June 30, 2007. (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 5**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that through the date last insured, Petitioner had the following severe impairments: rheumatoid arthritis and carpal tunnel syndrome. (AR 14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner, through the date last insured, did not have an impairment or combination of impairments that met or equaled one of the listed impairments. (AR 15).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). (AR 17).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.

The ALJ found Petitioner was unable to perform any of her past relevant work, but found that Petitioner could perform other work existing in significant numbers in the national economy in representative occupations such as a medical assistant, a pharmacy technician, a utilization review coordinator, a nurse consultant, and a nurse case manager. (AR 23-24).

**B.     Analysis**

In her opening brief, Petitioner raises three issues challenging the ALJ's denial of disability benefits. First, the ALJ erred in finding that Petitioner's impairment or combination of impairments do not functionally equal the listings. *See* Pet.'s Brief, pp.7-8 (Dkt. 16). Second, the ALJ failed to give appropriate weight to the opinions of Petitioner's treating physicians.

**MEMORANDUM DECISION AND ORDER - 7**

Third, the ALJ erred in finding that she has the residual functional capacity to perform work identified by the vocational expert.

Three related issues— not raised separately in Petitioner's opening brief but included in her reply and/or discussed in the argument sections of her opening brief— are whether the Social Security Administration considered the appropriate onset date, whether the ALJ erred in giving limited consideration to certain medical records, and whether the ALJ properly supported his credibility determination. *See, e.g.*, Pet.'s Br., p. 9 (arguing that excluding certain medical records "which are essential to the establishment of onset date, is harmful error of law"); *id.* at p. 15 ("The fact that the ALJ elected to find that the Petitioner lacked credibility is not supported in the Decision."). To the extent these matters relate to issues properly asserted by Petitioner in her opening brief or those discussed in Respondent's brief, the Court will consider them.

    *1.    Petitioner's Alleged Onset Date*

Petitioner argues in her reply that the "ALJ failed to properly develop" her onset date. Reply, p. 2 (Dkt. 21). She also mentions this issue twice in her opening brief. *See* Pet.'s Br., pp. 9, 12 (Dkt. 16). "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." Social Security Ruling 83-20, 1983 WL 31249, *1.

Although Petitioner testified at the hearing that a physician told her in 2004 she was functionally disabled because of lack of sensation and nerve conduction, AR 49, her disability report lists the "Claimant's Alleged Onset Date" as June 30, 2007. (Dkt. 17, Ex. A, p. 1) (Disability Report - Form SSA-3367). Petitioner points out that the "Potential Onset Date" is listed as June 30, 2007 because it is based on her date last insured, but the alleged onset date is

**MEMORANDUM DECISION AND ORDER - 8**

the same.  In sum, she did not allege an earlier potential onset date in her application.  *See also* AR 183 (stating Petitioner became unable to work on June 30, 2007); AR 206 (Disability Report - Form SSA 3368, listing "6/30/2007" as the date Petitioner "became unable to work"). Regardless, the ALJ questioned Petitioner at the hearing about her carpal tunnel and other medical issues arising before 2007.[3]  Considering Petitioner's repeated reference to June 30, 2007 as her onset date, the Court finds no error in the ALJ's use of this date as the onset date for purposes of his decision.[4]  *Id.*

> 2. *Whether the ALJ Erred in Giving Limited Consideration to Certain Medical Records*

Petitioner takes issue with the ALJ's decision to not consider as "relevant" treatment records from prior to the alleged onset date and after the date last insured (*see* Pet.'s Br., p. 9); instead, the ALJ considered these records only "for the limited purpose of establishing a context for medical treatment during the relevant period."  AR 18.  Thus, the ALJ "generally excluded" from his discussion treatment records from 2001 to 2006 and those from 2008 to the date of his decision.

---

[3] The ALJ questioned Petitioner about her carpal tunnel surgeries, which resulted in resolution of some symptoms.  AR 49-54.

[4] It is when there is an ambiguity as to the onset date of the disability that the ALJ must assist the claimant in creating a complete record by inferring an onset date.  *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).  This is not a situation like those considered in a Social Security Ruling on the issue, where "the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination," or in which "the alleged onset and the date last worked are far in the past and adequate medical records are not available."  *Richardson v. Astrue*, 2012 WL 5904733, 5 (N.D.Cal.) (N.D.Cal. 2012) (*quoting* SSR 83–20 (1983) (internal quotation marks omitted)).

**MEMORANDUM DECISION AND ORDER - 9**

The medical records the ALJ gave limited consideration in this case contained treatment notes, test results, and discussions of Petitioner's symptoms. *See* 20 CFR § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). These records include Exhibit 1F, which contains records from 2004 and 2005. These include treatment for Petitioner's chronic arm parastheias (AR 313-14) and records indicating she was treated for connective tissue disorder despite X-rays showing there were no supporting features for it (AR 310). Petitioner argues that the excluded records reflect early symptoms of her rheumatoid arthritis.

The ALJ did mention in his decision some records from Exhibit 1F (although he mis-cited to the Exhibit as 10F, *see* AR 18), noting that Petitioner underwent bilateral carpal tunnel release surgery in 2004. *Id. See also* AR 354-59. However, other treatment records and diagnoses from Exhibit 1F were not discussed.

Respondent points out that "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)). Although the Court agrees that these records may be of limited relevance, the ALJ here largely ignored them. In a recent unpublished memorandum disposition, a panel of the Court of Appeals for the Ninth Circuit reiterated that all medical opinions must be considered. *See Williams v. Astrue*, No. 09–17627, 2012 WL 3861961, *1-2 (9th Cir. Sept. 6, 2012). The panel's decision stated: "[I]t is clear from our precedent and the Social Security Regulations that '[t]he ALJ must consider all

**MEMORANDUM DECISION AND ORDER - 10**

medical opinion evidence.'"  *Williams*, at *1 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) and citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (ALJ errs completely ignoring medical evidence); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.")).  The panel in *Williams* determined that the ALJ erred in failing to consider three doctors' reports generated before the disability onset date.  Although *Williams* is an unpublished decision, it has persuasive value here, particularly where there are other issues that favor remand, as discussed below.

    In largely ignoring medical records from outside the disability period, and misconstruing some relevant facts from the record (to be discussed below), the ALJ did not adequately consider medical records related to the allegedly disabling conditions from a period of time near to the alleged disability period.  Accordingly, because this case will be remanded for the reasons described below, the ALJ should also reconsider whether medical opinions from outside the disability period that relate to or reflect on Petitioner's rheumatoid arthritis should be treated differently on remand.  The ALJ may choose how much weight to give such information because it is drawn from treatment records outside the disability period; however, they must be considered.

**MEMORANDUM DECISION AND ORDER - 11**

    *3.*    *Petitioner's Credibility*

Although not raised as a separate issue in her opening brief, Petitioner also takes issue with the ALJ's treatment of her statements and testimony.[5] *See* Reply, pp. 6-7 (Dkt. 21). The ALJ found that Petitioner's subjective complaints were not entirely credible, explaining that her statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with" the residual functional capacity assessment and medical evidence of record. (AR 20).

As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Nonetheless, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

In making his credibility assessment, the ALJ relied on the extent to which Petitioner's statements were supported by the objective medical evidence of record during what the ALJ

---

[5] The Respondent addressed the credibility issue at length in the response brief, despite its not being listed as a separate issue in the opening brief. Petitioner then discussed the issue at length in her reply brief.

**MEMORANDUM DECISION AND ORDER - 12**

deemed to be the relevant time period, as well as Petitioner's activities. The ALJ described Petitioner's activities:

> [S]he testified that she returned to taking classes in 2009. In addition, the record shows that since her alleged onset date, the claimant has traveled to Europe on at least two separate occasions, once in 2008 with Dr. Cooper, and once in 2010 when Dr. Cooper stated that she returned to England alone. [AR 279]. These activities are not consistent with her complaints of disabling pain.

(AR 21). Although Petitioner's attempt to return to school in 2009 was unsuccessful (AR 117), she did travel overseas. *See* AR 60 (Petitioner went on a two week bus tour during 2008 from Vienna to Istanbul); AR 99 (Dr. Blough's report that Petitioner moved from the United Kingdom to Boise "Because of a significant other"). Petitioner is correct that claimants should not be penalized for trying to live normal lives despite their challenges; however, the ALJ appropriately relied on Petitioner's ability to travel overseas in finding that Petitioner's activities are not consistent with her claim of disabling pain. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Moreover, Petitioner did not comply (for unexplained reasons) with advice to begin a course of physical therapy in April of 2007, a time very near to the disability period, and the ALJ relied on this also in making his credibility determination. (AR 19, 21). The ALJ also referenced Petitioner's failure to seek behavioral therapy for depression and anxiety for a period after May 2006. (AR 21). In assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina*, 674 F.3d at 1113.

The ALJ also relied on "an unexplained gap in the claimant's medical treatment records between March 2006 and February 2007." (AR 21). Petitioner testified that the gap in treatment

**MEMORANDUM DECISION AND ORDER - 13**

of her rheumatoid arthritis stemmed not from any lessening of her difficulties, but because of an inability until June of 2007 to locate a rheumatologist who would accept her insurance plan. AR 46. Because this case is being remanded for other reasons, the ALJ may consider whether the explanation for the treatment lapse makes any difference in a credibility determination.

    *4.       The Opinions of Petitioner's Treating Physician*

Petitioner argues that the ALJ erred by focusing on the opinion of Dr. Lagwinski, a rheumatologist, instead of giving more emphasis to the opinions of Dr. Susan Blough, and to Dr. Brian Hazelman's records.[6] Pet.'s Br., pp. 14-15 (Dkt. 16). All three of these physicians are treating sources.

A treating physician's medical opinion is entitled to special consideration and weight. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). Where the treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinion is contradicted by another doctor, the opinion can be rejected only for specific and legitimate reasons, supported by substantial evidence in the record. *Id*.

Even so, a treating physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§

---

[6] Dr. Hazelman treated Petitioner in 2004-05. He noted in one record: "She does have symptoms and signs of an inflammatory arthritis and I feel she does require further investigation and I would advise X-rays of the hands." AR 346.

**MEMORANDUM DECISION AND ORDER - 14**

404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Therefore, merely concluding that a particular physician is a treating physician does not mandate the adoption of that physician's opinions. In addition to the standard outlined above, treating physicians' opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and rationale to support treating physician's opinion is sufficient reason for rejecting that opinion).

Here, the ALJ accorded "limited weight to Dr. Blough's assessment of the claimant's ability to perform work-related activity" during the relevant period, in part because he found her conclusion that Petitioner is disabled "are not supported by her own treatment records." AR 21-22; *see also* AR 430. For instance, the ALJ noted that, "despite Dr. Blough's statement in April 2007 that the claimant was 'disabled'[,] four months later in August 2007, Dr. Blough observed that the claimant was working on re-entering the workforce." AR 20 (citing AR 433). Dr. Blough made the notation on reentering the work force on August 16, 2007, stating that Petitioner "was working with a neurology nurse at St Al's on re-entering workforce." AR 433. However, there is no indication in the record that Petitioner was successful in any attempt to reenter the workforce, and the ALJ gave a very thin veneer to such evidence by not going on to note that the "working...on re-entering workforce" consisted of trying to complete a continuing education course online, from home, which fizzled almost immediately after it began, because Petitioner said that she wasn't up to the task because of her physical limitations and fatigue.

**MEMORANDUM DECISION AND ORDER - 15**

Additionally, the ALJ relied in part on his interpretation of Dr. Blough's treatment notes, which he thought indicated Dr. Blough had "removed rheumatoid arthritis from the claimant's 'active problem list' on December 20, 2006." (AR 18).  However, although the word "Remove" appears in a side column on an "Active Problem List" for Petitioner, that does not mean the conditions listed next to that column were removed.  Instead, looking at all of the medical records together, the word "remove" appears to be a link on the computer screen to allow easy removal of problems from the list.  Rheumatoid arthritis was *added* by modification on December 20, 2006, not removed.

Allergies :  Keflex - rash, itching,  pcn - unknown,  Percocet - marked CNS effect with decrease in memory and judg

**Medical History**

**Active Problem List**

| | Code | Name | Onset Date | Specify | Notes | Modified On | Modified By |
|---|---|---|---|---|---|---|---|
| Remove | 714.0 | Rheumatoid arthritis | | | | 12/20/2006 | Blough, Susan L |
| Remove | 596.54 | Neurogenic bladder | | | | 12/20/2006 | Blough, Susan L |
| Remove | 309.81 | PTSD (Posttraumatic stress disorder) (NOS) | | | | 12/20/2006 | Blough, Susan L |
| Remove | V07.4 | HORMONE REPLACE POSTMENO | | | | 01/23/2007 | Blough, Susan L |
| Remove | 530.81 | GERD | | | | 01/23/2007 | Blough, Susan L |
| Remove | 595.2 | Other chronic cystitis | | | | 01/23/2007 | Blough, Susan L |

**Past Medical History**
Seronegative RA
Hormone Therapy
H/O Neurogenic bladder secondary to damage from surgery
TMJ, s/p multiple surgeries
GERD

The rheumatoid arthritis remained an active condition for which Petitioner sought treatment as reflected in Dr. Blough's treatment notes after December 20, 2006.  For example, on August 16, 2007, Dr. Blough noted in relation to Petitioner's "Seronegative rheumatoid arthritis" that "[s]he remains on the Plaquenil. She had been down to 3mg every other day but reports that she is back up to 10mg daily and will be doing a very slow taper.  I had reviewed recent notes

**MEMORANDUM DECISION AND ORDER - 16**

from Dr Lagwinski . . . ."  (AR 433).  *See also* AR 430 (4/2/07 treatment record from Dr. Blough listing "Antibody-Negative Rheumatoid Arthritis" in Petitioner's "Medical History").  Thus, Petitioner was being treated for rheumatoid arthritis by Dr. Lagwinski, with follow-up from Dr. Blough, supporting the view that this diagnosis had not been removed from the active problem list on December 20, 2006.

Dr. Lagwinski followed Petitioner "for her complaints of RA [rheumatoid arthritis]", AR 22 (citing AR 811-817), and the ALJ placed greater weight on Dr. Lagwinski's records and notes, which he was entitled to do.  However, his decision to discount Dr. Blough's opinions (who also was following Petition for her rheumatoid arthritis and other medical issues in the context of her work as an Internal Medicine specialist) was based on inconsistencies in her records that were not inconsistencies at all, such as the "removal" of RA from Petitioner's active problems list.

Additionally, the ALJ mistakenly referred to Dr. Blough as a "family medicine practitioner," rather than an internist.  Apparently, the ALJ intended to emphasize Dr. Blough's status as a "family practice" physician, and "not a neurologist, rheumatologist or orthopedist," as an additional reason for why the ALJ put more emphasis on Dr. Lagwinski's records and opinions.  Thus, it is one more inaccuracy underlying the ALJ's decision to largely discount Dr. Blough's findings and opinion.  AR 21.

In any social security case, the nature of the record and the volume of the docket easily allow for the possibility of some mistake in the recounting of the record and the evidence.  Such mistakes generally fall into the category of harmless error.  However, the mistakes in this case go directly to the heart of the ALJ's decision to discount the evidence that otherwise most

**MEMORANDUM DECISION AND ORDER - 17**

compellingly support Petitioner's claim. Such errors are not harmless. Accordingly, the ALJ has not offered specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Blough's medical opinion. On remand, the ALJ should consider Dr. Blough's speciality and whether it makes any difference to his weighing of the medical evidence.[7]

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

However, the reasons given by the ALJ for rejecting Dr. Blough's opinion rely in part on factual errors and is therefore not properly supported. This case is remanded for reconsideration. Because the Court has remanded for reconsideration of Dr. Blough's records and opinions, it has not considered Petitioner's two other arguments--whether her impairments met or equaled a listing and whether the ALJ erred in finding that Petitioner had the residual functional capacity to perform work identified by the vocational expert. Therefore, if appropriate after the ALJ

---

[7] Although Petitioner challenges the ALJ's treatment of medical opinions and records from Dr. Hazelman in 2005, Petitioner does not explain which parts of the records support her claim and how. Dr. Hazelman's notes are not unequivocal. He stated that "t[]here are no supporting features . . . at present of an underlying connective tissue discovered, but . . . I think she should be treated as a presumed connective tissue disorder." AR 310. He later opined that she has symptoms and signs of an inflammatory arthritis that does require further investigation. AR 312. However, his records predate the alleged onset of disability by two years and may be of limited relevance, especially considering the ALJ's reliance on the more recent treatment records of Dr. Lagwinski. *See Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

**MEMORANDUM DECISION AND ORDER - 18**

reconsiders his treatment of Dr. Blough's records and opinions, the ALJ should reconsider the hypothetical provided to the vocational expert and his decision as to whether Petitioner has the RFC to perform any work that is identified.

## V. ORDER

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 13, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge